

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
NOV 12 2015
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CONNIE BURNS, INDIVIDUALLY, AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GENEVA WOODS AND ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES OF
GENEVA WOODS, DECEASED                                    PLAINTIFF

VERSUS                                      CAUSE NO. 1:15cv378 HSO-JCG

COVENANT HEALTH & REHAB
OF PICAYUNE, LLC                                          DEFENDANT

COMPLAINT
JURY TRIAL DEMANDED

CONNIE BURNS, Individually, and as Personal Representative of the Estate of GENEVA WOODS, and on behalf of the Wrongful Death Beneficiaries of, GENEVA WOODS, deceased, complains of Covenant Health & Rehab of Picayune, LLC, as follows:

I.

Plaintiff Connie Burns ("Burns"), is an adult resident citizen of Pearl River County, Mississippi. Burns is the duly appointed and acting Personal Representative of the estate of Geneva Woods ("Woods") with Court authorization to institute this action on behalf of the wrongful death beneficiaries of Geneva Woods. All wrongful death beneficiaries are adult resident citizens of the state of Mississippi. In addition, Burns, as personal representative, is asserting a survival/personal injury claim for the emotional anguish and pain and suffering suffered by Geneva Woods during her lifetime. Burns is

also asserting her individual bystander's claim for the emotional anguish and suffering she experienced having personally witnessed the larvae impacting the various facial orifices of Woods as described below.

## II.

Covenant Health & Rehab of Picayune, LLC ("Covenant"), is a limited liability company organized and existing under the laws of the state of Delaware with its principal office in a state other than the state of Mississippi. Covenant is in the business of operating and maintaining a convalescent and nursing home for the care of aged, disabled and infirmed persons. All members of Covenant are either adult resident citizens of or limited liability entities of a state other than the state of Mississippi. Covenant is located at 1620 Read Road, Picayune, Mississippi and is operated for profit.

## III.

In accord with Miss. Code Ann. § 15-1-36, Burns has provided to Covenant sixty (60) days written notice of the intent to institute this action on behalf of Woods.  Also attached hereto as Exhibit "A" is a copy of the Certificate of Compliance executed by the undersigned counsel in accordance with Miss. Code Ann. § 11-1-58 (1972).

## IV.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## V.

Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to this claim occurred in Picayune, Pearl River County, Mississippi.

## VI.

## FACTS REGARDING ARBITRATION

Plaintiff has been trying to initiate this action, whether through arbitration or otherwise, for over ten (10) months with no success due to the intentional and systematic delays of the Defendant. On January 6, 2015, counsel for Plaintiff forwarded a letter to Defendant advising of his representation and requesting a copy of the Admissions Agreement, Resident's Rights, facility records and any alternative dispute resolution agreement. See Exhibit "B." On January 14, 2015, Dante Skourellos, counsel for Covenant, responded and advised that they could not provide the information requested absent Letters of Administration. See Exhibit "C." On March 18, 2015, counsel for Plaintiff wrote Mr. Skourellos again and enclosed an Order Appointing Connie Burns as Administratrix in the matter of Geneva Woods, Deceased, and again requested the Admissions Agreement, Resident's Rights, facility records and any ADR agreement. See Exhibit "D." When the information was not forthcoming, Counsel for Plaintiff requested the information again on March 25, 2015, and re-sent the Order Appointing Administratrix. See Exhibit "E." The facility records were forwarded to counsel for Plaintiff on March 26, 2015, but did not include the ADR agreement. On April 14, 2015, counsel for Plaintiff forwarded notice of her intent to file suit as required by Miss. Code Ann. § 15-1-36. See Exhibit "F."

On April 21, 2015, William Grubbs, counsel for Defendant, forwarded a letter advising of his representation of Defendant. See Exhibit "G." Following receipt of the letter, counsel for Plaintiff spoke telephonically with Mr. Grubbs' paralegal and made a request for the ADR agreement. Counsel for Plaintiff again requested a copy of the ADR agreement via email to Mr. Grubbs on April 29, 2015. See Exhibit "H." By May 18, 2015, Plaintiff still had not received a copy of the ADR agreement and forwarded another email to Mr. Grubbs. See Exhibit "I." Mr. Grubbs replied with a copy of the ADR agreement that day, but it literally took over 5 months of requesting a copy of the ADR agreement before counsel for Plaintiff could even determine whether an arbitration agreement existed.

Upon receipt of the ADR agreement on May 18, 2015, Plaintiff forwarded a demand for arbitration dated May 20, 2015, to Covenant and its counsel. See Exhibit "J." On June 10, 2015, John Houston, co-counsel for Covenant, sent an email to counsel for Plaintiff which stated that Covenant would be providing Plaintiff with information regarding the arbitration panel. See Exhibit "K." When counsel for Plaintiff did not receive the information counsel for Plaintiff emailed Mr. Houston and Mr. Grubbs requesting the information again on June 23, 2015. See Exhibit "L."

On Friday July 10, 2015, Plaintiff's counsel emailed Defendant's attorney again and advised if we had not received the information by the following Wednesday (July 15, 2015), we would be filing suit in the appropriate court. See Exhibit "M." On Wednesday, July 15, 2015, counsel for Covenant called and stated that he had spoken with JAMS (the arbitration service) and advised that the arbitration process would begin

once Plaintiff forwarded a Demand/Complaint for arbitration in to JAMS (the arbitration service) with a $250.00 Case Management Fee, and upon receipt of payment from Defendant of its $550.00 Case Management Fee.

Plaintiff filed the arbitration demand/Complaint on July 24, 2015, and copied opposing counsel on the Demand/Complaint.  In addition, Plaintiff forwarded the $250.00 Case Management Fee to JAMS.  On July 31, 2015, JAMS forwarded a letter to all counsel and acknowledged receipt of the Demand/Complaint, as well as receipt of Claimant's $250.00 Case Management Fee.  A copy of the letter is attached hereto as Exhibit "N."  JAMS also advised in the July 31 letter that the case will proceed once the Defendant forwarded its Case Management Fee of $550.00.  On August 20, 2015, counsel for Plaintiff emailed counsel for Defendant and asked if payment had been made as there had been no activity in the case.  See Exhibit "O."

On August 26, 2015, Plaintiff's counsel conversed with Defendant's counsel telephonically about the status of the payment.  Defense counsel advised that he believed payment and an answer to the Demand/Complaint had been sent, or was being sent, to JAMS from the Tallahassee law office of their firm.  Counsel for Plaintiff requested that counsel for Defendant forward a copy of the cover letter for the payment. See Exhibit "P."  On the same day, August 26, 2015, the paralegal for Defendant's counsel sent an email to the JAMS coordinator attaching an answer to the demand. Counsel also advised that the invoice for the $550.00 Case Management Fee had been submitting for processing.  A copy of the email is attached hereto as Exhibit "Q."

As of September 9, 2015 JAMS still had not received payment. This was confirmed via telephonic conference between counsel for Plaintiff and JAMS coordinator Ankur Haldar. In other words, approximately 45 days elapsed following the filing of the arbitration Demand/Complaint because Defendant simply refused to make its mandatory payment. Finally, on October 8, 2015, almost a month later, counsel for Plaintiff received notice that the initial filing fee had finally been paid by Defendant. On the same day, JAMS submitted an invoice to Defendant in the amount of $5,750.00 in retainer fees for the arbitrator. See Exhibit "R." The letter stated that arbitration proceedings would move forward via an initial conference upon receipt of payment from Defendant. After fifteen (15) days elapsed, and hearing nothing from JAMS or Defendant, counsel for Plaintiff emailed the JAMS coordinator to determine whether or not Defendant had submitted its payment. See Exhibit "S." The JAMS coordinator replied that they had not received payment. See Exhibit "T." Counsel for Plaintiff advised the coordinator and counsel for Defendant that, if Defendant intended to delay any further, then the arbitration should be dismissed and Plaintiff should be allowed to file an action in the appropriate court. See Exhibit "U." Defendant's counsel replied to the email and advised that "there is no delay" and that he was submitting the invoice to his firm for payment. See Exhibit "V."

Two more weeks elapsed and after hearing nothing from JAMS or Defendant, counsel for Plaintiff emailed the JAMS Coordinator and inquired if payment had been received and Mr. Haldar advised that payment had not been received. See Exhibit "W." Following receipt of this email, Plaintiff filed a Notice of Withdraw of the Request for

Arbitration on November 11, 2015. See Exhibit "X." Due to Defendant's systematic and unreasonable delays in this matter, arbitration has been waived by the Defendant.

## FACTS REGARDING CAUSE OF ACTION

### VII.

On or about July 17, 2013, Woods was admitted as a paying resident to Covenant for assistance with medical and life care. At the time of her admission, Woods was disabled and infirmed, yet, Covenant undertook and agreed to provide the necessary and proper supervision for her physical and medical needs. At the time of her admission to Covenant, Woods suffered from various ailments including, but not limited to, malignant melanoma in the right ear. With that specific knowledge, Covenant represented to Woods and others similarly situated that it was an expert in the operation of a convalescent and nursing homes and possessed the requisite skill to monitor and provide proper care for Woods. Covenant agreed to provide Woods with the necessary and proper care for her emotional and physical well-being.

### VIII.

At all material times Covenant was under an absolute and non-delegable duty to exercise the highest degree of care and skill for its residents to protect each resident from injury and careless exposure to serious illness.

### IX.

At the time Woods was admitted to Covenant, its agents, servants and employees were informed and instructed that Woods suffered from melanoma in the right ear. Woods underwent surgery in November of 2012 and December 2012 for her condition.

Following the surgeries, flies and a foul odor were noticed around and near the right ear of Woods. On or about June 29, 2014, as well subsequent times, an inordinate amount of insect larvae were found oozing from the ears, nose and other areas of the anatomy. Plaintiff Burns witnessed the infestation of the larvae on June 29, 2014, as well as subsequent times. The nursing staff and other members of the staff of Covenant failed to properly monitor the ear wound of Woods and failed to implement necessary and proper wound care. Specifically, the nursing staff of Covenant failed to properly monitor and treat the wound and to provide the appropriate medication and treatment in response to the wound. As a result of these failures, Woods' right ear, and other areas, became infested with insect larvae which resulted in damages for both Woods and Plaintiffs. Woods died on June 30, 2014, due to cardiopulmonary arrest.

### X.

The treatment rendered by the employees and agents of Covenant failed to meet the minimal standard of care required of a minimally competent facility. The acts, omissions and commissions of the employees and agents are imputed to Covenant for which Covenant is liable.

### XI.

Burns charges that Covenant, its agents, servants and employees, were negligent in one or more of the following respects which caused or proximately contributed to the death and personal injuries of Woods:

1) In negligently failing to exercise reasonable care in the assessment, evaluation, management and care of Woods' physical and emotional health;

2) In negligently failing to exercise the minimal care required of an institution under a common law and statutory duty to exercise the highest degree of care;

3) In negligently failing to properly monitor Woods, a resident who was unable to care for herself and depended exclusively on Covenant to protect her and not subject her to suffering, humiliation and a degrading and inhumane existence;

4) In negligently failing to administer proper wound care;

5) In negligently failing to properly provide the appropriate medication and treatment in response to Woods' physical and medical needs;

6) In negligently failing to implement or otherwise comply with a comprehensive care plan for its residents. The plan must include measurable objectives and timetables to meet the medical, nursing and mental needs of its residents;

7) In negligently failing to properly and timely notify Woods' family of her condition; and,

8) In negligently violating certain federal standards in the planning, care and treatment of Woods as published in the *Federal Register*.

## XII.

The acts, omissions, and commissions of Covenant and its employees, agents and servants were the sole proximate cause or a proximate contributing cause of Woods' untimely death, personal injuries suffered by Woods before her death, and personal injuries of Plaintiff Burns.

XIII.

As a direct and proximate result of the negligence of the Defendant, the wrongful death beneficiaries of Woods have suffered the loss of association, love, affection and economic support and related damages occasioned by her wrongful death, including but not limited to the mental and physical pain and suffering endured by Woods, the medical, and burial expenses and other damages recoverable under the Mississippi Wrongful Death Statute.

XIV.

As a direct and proximate result of the aforementioned negligence of Defendant, Plaintiff Burns suffered personal injuries and damages as follows:

1) Plaintiff Burns was in close proximity to the bed of and personally observed the larvae infestation and the degrading movement of the larvae from the facial orifices of Woods; and

2) The shock and emotional anguish suffered by Burns resulted from the sensory and contemporaneous observance of the larvae incident; and

3) Plaintiff Burns and the victim were closely related, that is, Woods is the mother of Burns.

XV.

Defendant was grossly negligent and/or demonstrated a willful and wanton disregard for the well-being of Plaintiff and Geneva Woods. The detestable and inexcusable conduct of the Defendant, through its agents and employees, demands the imposition of punitive damages. Accordingly, Plaintiff is entitled to award of punitive

damages.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, CONNIE BURNS, Individually under a by-stander claim, and as the Personal Representative of the Estate of GENEVA WOODS and on behalf of the Wrongful Death Beneficiaries of GENEVA WOODS, demands judgment as follows:

(1) Compensatory damages for the wrongful death, or alternatively for the personal injuries suffered by Geneva Woods in the sum of $500.000.00;

(2) Compensatory damages for Connie Burns, as a by-stander, in the sum of $500,000.00;

(3) Punitive damages for the wrongful death, or alternatively for the personal injuries suffered by Geneva Woods and for the by-stander claim of Connie Burns in the sum of $10,000,000.00, *in globo*;

(4) Post judgment interest and cost.

Respectfully submitted this the 11th day of November 2015.

PLAINTIFF,

OWEN, GALLOWAY & MYERS, P.L.L.C.

_____
JOE SAM OWEN, MSB # 3965
ROY A. NOWELL, JR., MSB # 100768

Owen, Galloway & Myers, P.L.L.C.
1414 25th Avenue
Gulfport, MS   39502
228/868-2821 – Telephone
228/864-6421 – Facsimile
jso@owen-galloway.com
ran@owen-galloway.com