IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CONNIE BURNS,** *Individually and*                           **PLAINTIFF**
*as Personal Representative of the Estate of*
*Geneva Woods and on Behalf of the Wrongful*
*Death Beneficiaries of Geneva Woods, Deceased*

v.                                **Civil No. 1:15cv378-HSO-JCG**

**COVENANT HEALTH & REHAB**
**OF PICAYUNE, LLC**                                 **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION [5] TO ENFORCE
ARBITRATION AND FOR ATTORNEYS' FEES**

BEFORE THE COURT is the Motion to Enforce Arbitration and for Attorneys' Fees [5] filed by Defendant Covenant Health & Rehab of Picayune, LLC ("Covenant"). Plaintiff Connie Burns has filed a Response [9] in opposition to Defendant's Motion [5], arguing that Defendant has waived its right to arbitration by dilatory conduct and failure to timely pay arbitration fees. The Court will grant Defendant's motion to compel arbitration and stay these proceedings, pursuant to 9 U.S.C. § 3, but will deny Defendant's request for attorneys' fees in defending this action.

I. BACKGROUND

A.     Factual Background

Plaintiff's mother Geneva Woods was admitted as a resident at Covenant's nursing home, Covenant Nursing and Rehab Center, on July 17, 2013. Compl. [1], at 7, 10. Before becoming a resident at Covenant, Ms. Woods underwent two

surgeries for malignant melanoma of the ear. *Id.* at 7. Plaintiff alleges that the Covenant nursing staff "failed to properly monitor and treat the wound and . . . Woods' right ear, and other areas, became infested with insect larvae." *Id.* at 8. Ms. Woods passed away on June 30, 2014, due to cardiopulmonary arrest. *Id.*

B.    Procedural History

On January 6, 2015, Plaintiff's counsel advised Covenant that he would be representing Plaintiff in her personal injury/wrongful death case against Covenant and requested a copy of Ms. Woods's admission agreement, records, and any Alternative Dispute Resolution ("ADR") agreement. Ltr. [9-1]. On January 14, 2015, Defendant's counsel requested that Plaintiff provide letters of administration regarding Ms. Woods's estate so that the requested documents could be provided. Ltr. [9-2]. On March 18, 2015, Plaintiff's counsel sent Defendant an Order appointing Plaintiff as administratrix of Ms. Woods's estate and again requested the needed documents to proceed with Plaintiff's claims. Ltr. [9-3]. On March 25, 2015, Plaintiff's counsel again wrote Defendant asking that the facility records be provided and inquiring whether an arbitration agreement existed. Ltr. [9-4]. Records were sent to Plaintiff on March 26, 2015, but an ADR agreement was not included. Pl.'s Resp. [10], at 3. On April 14, 2015, Plaintiff sent notice of her intent to file suit. Ltr. [9-5].

On April 21, 2015, Defendant's counsel responded to Plaintiff's notice of suit by advising of his representation in this matter, but counsel did not reference an arbitration agreement. Ltr. [9-6]. Plaintiff's counsel requested a copy of any ADR

agreement two more times.  Email [9-7]; Email [9-8].  Defendant's counsel finally forwarded the ADR Agreement on May 18, 2015.  Pl.'s Resp. [10], at 4.

Two days after receiving the ADR agreement, Plaintiff forwarded a demand for arbitration.  Ltr. [9-9].  On June 10, 2015, Defendant's counsel emailed Plaintiff, writing that information regarding the arbitration panel would be forthcoming.  Email [9-10].  By July 10, 2015, Plaintiff had not received information on the arbitration panel.  Ltr. [9-12].  Plaintiff's counsel then threatened to file suit if the information was not received by July 15, 2015.  *Id.*  On July 15, 2015, Defendant's counsel called Plaintiff's counsel to advise how to start the arbitration process with JAMS Arbitration, Mediation and ADR Services ("JAMS"), the arbitration service agreed to in the ADR Agreement.  Pl.'s Resp. [10], at 5; ADR Agreement [9-24], at 2.

Plaintiff filed an Arbitration Claim/Complaint on July 24, 2015, and paid the required case management fee.  Pl.'s Resp. [10], at 5; Arbitration Claim [5-4].  On July 31, 2015, JAMS acknowledged receipt of the Claim and instructed the parties that the arbitration would proceed once Defendant paid its case management fee.  JAMS Ltr. [9-13].  As of August 20, 2015, Defendant had not paid the case management fee.  Email [9-14].

On August 26, 2015, Defendant filed its Answer to the Claim/Complaint for Arbitration.  Arbitration Answer [5-5].  Plaintiff's counsel followed-up on the non-payment of the filing fee by phone, and Defendant's counsel admitted that the fee had not been paid, but claimed it had been submitted for processing.  *Id.* at 5–6; Email [9-16].  Plaintiff's counsel followed-up with JAMS on September 9, 2015, and

3

the fee still had not been paid.  Pl.'s Resp. [10], at 6.

On September 11, 2015, JAMS issued a Commencement of Consumer Arbitration letter, announcing the formal commencement of the arbitration and giving instructions to the parties on how to choose arbitrators.  JAMS Commencement [5-6].

On October 8, 2015, Plaintiff received notice that Defendant had paid the filing fee, and the JAMS Case Manager provided an Appoint of Arbitrator packet.  JAMS Appointment of Arbitrator Not. [9-17].  JAMS then submitted an invoice to Defendant in the amount of $5,750.00 in retainer fees, stating that the arbitration would move forward upon receipt of payment.  *Id.*

On October 23, 2015, Plaintiff's counsel emailed the JAMS Case Manger to inquire about the status of the retainer fee, and but was informed that Defendant's payment had not been received.  Email [9-19].  Plaintiff's counsel then advised the Case Manager and Defendant's counsel of Plaintiff's intention to file suit if payment was delayed any longer.  Email [9-20].  Defendant's counsel insisted there was no delay, and the invoice would be submitted for payment.  Email [9-21].  On November 6, 2015, Plaintiff's counsel confirmed by email that the retainer fee still had not been received.  Email [9-23].

On November 11, 2015, Plaintiff sent a Notice of Withdrawal of the Request for Arbitration for filing in the JAMS proceeding, asserting that Defendant had waived its right to arbitration by systematic and unreasonable delays.  Not. Withdrawl [5-8].  Plaintiff filed the present suit in this Court on November 12,

2015. Compl. [1]. As of the date this suit was filed, Defendant had not paid the retainer fee. Pl.'s Resp. [10], at 7.

On November 17, 2015, the JAMS Case Manager informed the parties that although it had received Plaintiff's Notice of Withdrawal, pursuant to Rule 13(a) for the JAMS Comprehensive Arbitration Rules & Procedures (the "JAMS Rules"), a party cannot withdraw following formal commencement without written consent of the Defendant. Email [5-10]. The Case Manager gave Defendant until November 20, 2015, to consent to withdrawal or pay the arbitration retainer. *Id.* If the fee was not paid by that date, the matter would be placed in administrative suspension. *Id.*

On November 20, 2015, Defendant informed JAMS that it did not consent to Plaintiff's withdrawal, and finally paid JAMS the arbitration retainer. Emails [5-11], [5-12]. Having received the fee, the JAMS Case Manager informed the parties that the matter could now move forward and attempted to schedule a conference with the Arbitrator. Email [5-12]. On December 4, 2015, the JAMS Case Manager scheduled a conference call with the Arbitrator to discuss scheduling, and Plaintiff's counsel informed the Case Manager of Plaintiff's intent to proceed with her suit in this Court instead of pursing her claims in arbitration. Email [5-13].

On December 8, 2015, the parties participated in a telephone conference with Arbitrator Elizabeth Watson. Confirmation Emails [5-14], [5-15]. Arbitrator Watson advised the parties that the matter would be held in abeyance pending the outcome of this Court's decision on whether Defendant had waived its right to

5

arbitrate. Confirmation Emails [5-14], [5-15]. Defendant filed the instant Motion [5] to Compel Arbitration and for Attorneys' Fees on December 22, 2015.

## II. DISCUSSION

A.  Legal Standard

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed . . . absent a ground for revocation of the contractual agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The agreement to arbitrate a dispute may be revoked and the parties may waive their rights to enforce arbitration because "[t]he right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009).

Whether a party has waived its right to arbitration is "a fact-dependent inquiry." *Nicholas*, 565 F.3d at 910. In the Fifth Circuit, a party waives its right to arbitration when (1) the party seeking arbitration substantially invokes the judicial process and (2) detriment or prejudice to the other party results. *Id.; Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986). A party invokes the judicial process by taking overt action in court that indicates a desire to resolve the dispute through litigation rather than arbitration. *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002). "'Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position.'" *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010)

(quoting *Nicholas*, 565 F.3d at 510).

A party also waives its right to enforce a contractual agreement for arbitration when that party in is default in the arbitration proceedings. *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 606 n.4 (5th Cir. 1995). Pursuant to 9 U.S.C. § 3, when a party brings suit in federal court on issues covered by an arbitration agreement, the district court shall stay the action until arbitration has been had, providing the party who moves for the stay "is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

"Whether there is such a default or waiver is an issue for the court." *Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F. Supp. 2d 640, 644 (E.D. Va. 2006); *see also Miller Brewing Co.*, 781 F.2d at 497 n. 4 ("The issue of arbitrability under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* is a matter of federal substantive law."). In light of the strong federal policy in favor of enforcing parties' arbitration agreements, federal law establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

B.   <u>Defendant has Not Waived its Right to Compel Arbitration</u>

No party disputes that Plaintiff's claims are subject to a binding arbitration agreement. Plaintiff argues that Defendant has waived its right to compel arbitration by failing to timely pay the retainer fee, and exhibiting a pattern of

7

delay. Pl.'s Resp. [9], at 3. In the Fifth Circuit, "waiver of arbitration is not a favored finding, and there is a presumption against it." *Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1164 (5th Cir. 1987). To meet the heavy burden of establishing waiver, Plaintiff must show that (1) Defendant has "substantially invoked the judicial process" and that (2) Plaintiff was sufficiently prejudiced by Defendant's conduct. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991).

    1. <u>Defendant has Not Substantially Invoked the Judicial Process</u>

The record reveals that Defendant has not substantially invoked the judicial process. Federal courts examining what conduct amounts to a substantial invocation of the judicial process have traditionally required "active participation in a lawsuit or some other type of act inconsistent with the desire to arbitrate." *Consorcio Rive, S.A. de C.V. v. Briggs Of Cancun, Inc.*, 134 F. Supp. 2d 789, 795 (E.D. La. 2001). The only documents Defendant has filed in any court are the instant Motion [5] to Compel Arbitration and a Corporate Disclosure Statement [7]. Defendant has not sought discovery or actively participated in this lawsuit, but has timely expressed its desire, within the context of this litigation, to proceed in arbitration.

Defendant also did not invoke the judicial process by constructively forcing Plaintiff into litigation through nonpayment. Under the ADR Agreement and JAMS Rules, Defendant's failure to timely pay arbitration fees did not leave Plaintiff with no other reasonable option than to invoke the judicial process. The

parties' arbitration agreement provides that if one party fails to participate in arbitration, the other party may proceed on the merits in arbitration alone. ADR Agreement [9-24], at 3. Therefore, a failure to pay fees could result in the arbitration moving forward with one party alone, without suit being filed in court. Similarly, the JAMS rules provide that if proceedings are terminated or suspended for nonpayment, a party wishing to proceed with the arbitration may pay a non-paying parties' fees and be awarded reimbursement. JAMS Rule 6(c) [5-9], at 5. The JAMS Rules do not permit a party to unilaterally withdraw after the issuance of a commencement letter. JAMS Rule 13 [5-9], at 8. In sum, by failing to timely pay arbitration fees, Defendant did not constructively invoke the judicial process, because Plaintiff had recourse within the framework of the arbitration proceedings for such non-payment, and was not constructively forced to file suit to obtain a remedy.

Plaintiff argues that invocation of the judicial process is not strictly necessary, and Defendant need only have taken action "inconsistent with the desire to arbitrate." *See Briggs Of Cancun, Inc.*, 134 F. Supp. 2d at 795. Plaintiff cites *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828, 837 (Miss. 2003), for the proposition that a party acts inconsistently with its right to arbitrate, thereby waiving that right, when it refuses to pay arbitration fees. In *Sanderson Farms*, the defendant in arbitration refused to pay its share of the arbitration fees under the arbitration agreement, and the Mississippi Supreme Court held the defendant had breached the arbitration agreement and waived its right to arbitration by such

9

refusal.  *Id.*  Here, however, Defendant was late in submitting payment; Defendant never denied that the fees were owed or refused to pay the fees.  While a party may waive a right to proceed in arbitration by refusing to pay fees, Defendant's actions in delaying payment while continuing to assert a desire to proceed in arbitration are not so extreme as to be considered actions inconsistent with a desire to proceed in arbitration.  Defendant has not substantially invoked the judicial process or taken action so inconsistent with the desire to arbitrate as to constitute waiver.

    2.  Plaintiff was Not Substantially Prejudiced by Defendant's Conduct

Even if Defendant's actions were inconsistent with the desire to arbitrate, Plaintiff has not suffered prejudice to such a degree that a finding of waiver would be justified.  Plaintiff has suffered some hardship due to Defendant's delays, including incurring costs and fees in filing this action, time delays, and legal fees incurred in counsel's repeated attempts to ensure payment.  The record does not reveal, however, that Plaintiff has suffered any damage to her legal position such that Plaintiff would be prejudiced going forward in the arbitration.

"Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration."  *Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 569 F. Supp. 1459, 1467 (S.D. Tex. 1983).  "Delay or the requirement that a party pay arbitration fees cannot alone establish prejudice."  *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 848 (S.D. Tex. 2013).  Given that waiver is not to be inferred lightly, *Lawrence*, 833 F.2d at 1164, the Court finds that Plaintiff has not demonstrated that she has been so

unfairly prejudiced by Defendant's dilatory conduct that Defendant could be said to have waived its right to arbitration.

C.     Defendant is Not in Default

Plaintiff argues that under 9 U.S.C. § 3, the Court is not required to compel arbitration because Defendant defaulted on its obligation to pay the retainer fee. At the time Plaintiff filed suit in this Court, Defendant was arguably in default in the arbitration proceedings, having failed to timely pay the arbitration retainer; but by the time Defendant filed the instant motion, the retainer had been paid and JAMS was ready to move forward with the arbitration.

In cases where federal courts have found a party in default for failure to pay fees, the arbitration proceedings had been suspended or terminated for non-payment. *See Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015); *Sink v. Aden Enters.*, 352 F.3d 1197, 1199 (9th Cir. 2003); *Garcia v. Mason Contract Products*, LLC, No. 08-23103-CIV, 2010 WL 3259922, at *3 (S.D. Fla. Aug. 18, 2010). When an arbitrator has not held a hearing to address non-payment or has not otherwise suspended or terminated the proceedings, it is premature for a court to find default. *See North St., LLC v. Clipper Const., LLC*, No. CIV.A. 08-4604, 2010 WL 3523025, at *3 (E.D. La. Sept. 2, 2010) (finding it premature to lift a stay of federal proceedings when the matter of a party's default for non-payment of arbitration fees was still under consideration by the arbitrator).

While the issue of default is a matter for the Court to decide, *Karnette*, 444 F. Supp. 2d at 644, as a practical matter parties generally should afford arbitrators an

opportunity to address a party's default within the context of arbitration proceedings before turning to the courts for relief. *See North St., LLC*, 2010 WL 3523025, at *3. Although Defendant was delinquent in submitting the arbitration retainer, the Arbitrator had not yet suspended or terminated the arbitration proceedings or held a hearing to address the delinquent payment. The Court finds that on the record before this Court, a finding of Defendant's default in the arbitration proceedings as of the date the Complaint was filed would be premature.

If the Court examines the issue of default as of the date Defendant moved to compel arbitration proceedings, December 22, 2015, Defendant was technically no longer in default at that point. Defendant paid the arbitration retainer on November 20, 2015. Email [5-12]. As of the December 8, 2015, conference call with the Arbitrator, the arbitration could have moved forward, as any prior default had been cured. Email [5-13].

When Defendant filed its Motion [5] to Compel Arbitration on December 22, 2015, Defendant was no longer in default, such that the Court is bound by the mandatory language of 9 U.S.C. § 3 to grant the Motion [5] to Compel, order the parties to continue with the arbitration, and stay these proceedings.[1] Given

---

[1] The Fifth Circuit has held that a district court has the discretion to dismiss rather than stay a case where all the issues raised in court must be submitted to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."). Here, given the history of the dispute, the Court is of the view it should stay rather than dismiss this case.

Plaintiff's concern with what the Court perceives as Defendant's earlier apparently unjustified pattern of delay, the Court finds that arbitration should be compelled without prejudice to Plaintiff's right to request that the Court lift its stay of these proceedings if Defendant defaults in the arbitration going forward.

D.     Defendant's Request for Attorneys' Fees

Based on the record before the Court, Defendant is not entitled to attorneys' fees for defending this action.  The record reveals a clear lack of diligence on the part of Defendant in payment and communication, if not outright bad faith. Plaintiff gave Defendant notice of its intention to file suit in court if Defendant continued to delay payment of arbitration fees.  Email [9-20].  Any attorneys' fees Defendant incurred as a result of defending this action were a foreseeable consequence of Defendant's own delay and inaction.  The Court will deny Defendant's request for attorneys' fees.

III.  CONCLUSION

For the foregoing reasons,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion to Enforce Arbitration and for Attorneys' Fees [5] filed by Defendant Covenant Health & Rehab of Picayune, LLC is **GRANTED IN PART**, in that Plaintiff Connie Burns is compelled to proceed with arbitration.  The Motion [5] is **DENIED IN PART**, in that Defendant's request for attorneys' fees is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that this matter is **STAYED** pending the outcome of arbitration proceedings before JAMS Arbitration,

Mediation and ADR Services, bearing matter number 1440001467.  Upon conclusion of the arbitration, the parties shall notify the Court in writing within fourteen (14) calendar days so that the Court may either lift the stay or dismiss this case as may be appropriate.

**SO ORDERED AND ADJUDGED**, this the 18th day of February, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE